## SUE A. SIMS, Appellant, v. J. P. SIMS et al., Respondents.

### St. Louis Court of Appeals, April 28, 1903.

1. **Husband and Wife**: JOINT ESTATE: UNDUE INFLUENCE: CONTRACT INEQUITABLE AND FRAUDULENT. Plaintiff alleged that her husband and herself borrowed money of the husband's father, to be used, together with a fund owned by the two jointly, in the purchase of certain land, securing the loan by a trust deed on the land, and that, in view of the possibility of existing difficulties between herself and her husband causing a separation, the husband and his father conspired to make the trust deed for a much larger sum than was actually advanced, but that she signed the deed through fear of losing her share of the money owned by the two jointly and to prevent a further estrangement. Plaintiff seeks to have the difference between the amount of the deed and the amount actually advanced, credited on the note, and offered, if this was done, to pay the latter amount. *Held*, that as there was no allegation that plaintiff was in danger of immediate loss through some action about to be taken by the holder of the deed of trust that would prevent plaintiff from pleading failure of consideration, when an effort was made to collect the debt, and as there was no unconditional tender of the amount actually due, the bill did not state a cause of action founded merely on the allegation of failure of consideration.

2. ———: PETITION: DEMURRER: UNDUE INFLUENCE. The allegations of the petition, will be treated as true on the demurrer, and hence it must be *held*, that the free agency of the plaintiff was destroyed and she was by undue influence constrained to execute the deed of trust.

3. ———: TENDER OF AMOUNT DUE: RELIEF PROPER. On. tendering into court the amount actually advanced, plaintiff was also entitled to relief on the ground that the contract was unconscionable.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

Reversed and remanded *(with directions).*

*T. J. Delaney* for plaintiff.

(1)    On the facts admitted by the demurrer, defendant obtained the note of plaintiff for $1,050, when only $400 was advanced. That this excess was not a gift or bonus for the use of the $400, stands admitted. That the excess has no consideration to support it, stands admitted. So if defendant Sims were suing to recover judgment on said note, the facts stated would be a good defense at law. McCord v. Crooker, 83 Ill. 556; Bank v. Buttner, 60 Ia. 654; Cawley v. Kelley, 60 Wis. 315 (19 N. W. 65); Keith v. Hobbs, 69 Mo. 84; Hacker v. Brown, 81 Mo. 68; Moore v. Maddock, 33 Mo. 575. (2)    In the case at bar, the demurrer confesses a transaction so unconscionable as to shock the moral sense, and this court should interfere to promote the ends of justice and defeat the machinations of fraud resorted to by defendant Sims to extort from his helpless daughter-in-law the proceeds of the sale of her home to the last farthing. If precedent be wanting, this court has a golden opportunity. Holmes v. Fresh, 9 Mo. 201; Tison v. Labeaume, 14 Mo. 198; Morriso v. Philiber, 30 Mo. 145; Railroad v. Brown, 43 Mo. 294; Durfee v. Moran, 57 Mo. 374; Nelson v. Betts, 21 Mo. App. 219; Cobb v. Day, 106 Mo. 301; Knoop v. Kelsey, 121 Mo. 642; Davis v. McCann, 143 Mo. 172; Osgood v. Franklin, 2 Johns Ch. 24; Nelson v. McDonald, 6 Johns Ch. 211. (3)    Whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his or her will, is undue influence. Regard must be had for the sex of plaintiff and the condition of the parties. In this transaction plaintiff stood *in vinculis.* Davis v. Luster, 64 Mo. 43; Bell v. Campbell, 123 Mo. 15; Berlien v. Biler, 96 Mo. 491; Turley v.

Edwards, 18 Mo. App. 676; Underhill v. Harwood, 13 Ves. 214, 242.

*Vaughan & Coltrane* for respondents.

(1)  Duress is defined to be in its general sense that degree of constraint or danger either actually inflicted or threatened and impending, which is sufficient, in severity or in apprehension, to overcome the mind and will of a person or ordinary firmness.  It is established where actual or threatened violence or restraint contrary to law compels one to enter into or discharge a contract.  Anderson's Law Dictionary, title, "Duress;" Merideth v. Merideth, 79 Mo. App. 636.  (2) In pleading duress the facts which go to make it up or constitute it must be stated.  In a case determined by this court it was said by Judge Thompson:  "The language used by the pleader in this case does not state in what the 'threats, intimidation and overbearing persistence' employed by the plaintiff consisted.  It does not even state that the plaintiff threatened to do any unlawful act.  It is too plain for argument that such allegations do not constitute a good plea of duress." Murdock v. Lewis, 26 Mo. App. 234; 2 Chitty on Pleading, 370.  (3)  The action is really to rescind the contract entered into at the time the money was borrowed, and to avoid the sale of the property under the deed of trust, and under such circumstances the plaintiff is required to tender back to the defendant whatsoever was received under the contract sought to be rescinded, but she does not do this.  This failure to tender back or deposit in court for defendant's use the money received makes the pleading bad.  Cahn v. Reid, 18 Mo. App. 115; Melton v. Smith, 65 Mo. l. c. 324; Retzer v. Dold Packing Co., 58 Mo. App. 264.

BLAND, P. J.—Omitting caption and signature, the petition is as follows:

"Plaintiff states that on the seventeenth day of August, 1901, and at all the dates herein mentioned, she and one B. M. Sims were husband and wife and had sustained said relation for a long time prior to said August 17th; that on said day she and her husband owned and possessed the sum of eight hundred dollars, the proceeds of the sale of a piece of real estate jointly owned by them, in which said real estate each had and was possessed of an undivided one-half interest, and by reason of the premises she was the owner of one-half of said sum, to-wit, four hundred dollars, and it was agreed between her and her husband that a new home should be bought with the proceeds aforesaid, and when bought it would be taken in their joint names, each to own an undivided one-half interest as their former home had been held.

"That upon this understanding she negotiated for the sale of said former home, joined in the conveyance thereof, received the check or draft for the said eight hundred dollars, and in person deposited the same in the National Exchange Bank of Springfield, Missouri, to the credit of her said husband, but plaintiff avers that she did not intend to and did not make a gift thereof to her said husband and did not in writing assent or confer upon her said husband the right to dispose of said fund, but one-half thereof, to-wit, four hundred dollars remained the sole and separate property of said plaintiff and the possession so conferred by plaintiff on said husband, of said fund was for their joint use and benefit.

"That about said time the said B. M. Sims and plaintiff herein concluded to reinvest said money in a home and concluded to purchase from one F. P. Chandler the following described real estate situate in Greene county, Missouri, to-wit, the west half of the southeast quarter of the southwest quarter of southwest quarter of section 36, township 29, range 22.

"That said Chandler contracted and agreed to sell and convey said premises to this plaintiff and her said husband for the price and sum of twelve hundred dollars and this plaintiff and her said husband agreed to buy said land and agreed that the money so deposited in the National Exchange Bank should be used in the purchase thereof and that the title thereto should be taken in their joint names; and said B. M. Sims made an arrangement by which a sum sufficient to make the twelve hundred dollars, to-wit, four hundred dollars, should be borrowed from the defendant herein, J. L. Sims; that at the request of said B. M. Sims the said J. L. Sims did advance and loan on said account to said B. M. Sims the sum of four hundred dollars and on his personal account the sum of one hundred dollars and that said sum of four hundred dollars was on the twenty-second day of August, 1901, deposited in said bank to the credit of said B. M. Sims.

"Plaintiff further states that on said day, to-wit, August 22, 1901, the said F. P. Chandler was paid the sum of twelve hundred dollars, but plaintiff is unable now to state whether it was by check of the said B. M. Sims or whether the said money was paid to the defendant herein, J. L. Sims, and through him to said F. P. Chandler, or whether the said J. L. Sims advanced said sum to said Chandler and was repaid by said B. M. Sims by check on said fund, but believes the fact to be and so charges that the said B. M. Sims paid the sum of twelve hundred dollars to said Chandler by check on said fund.

"Plaintiff further states that at said time she was not consulted about the residue and did not want to borrow the difference from said J. L. Sims as there were unhappy differences then between her and her said husband owing as she believed to the undue influence of said J. L. Sims, but she finally consented to such arrangement.

"That said money having been paid to said F. P.

Chandler he did on said August 22, 1901, make, execute and deliver his deed by which he conveyed to said plaintiff and her said husband the land hereinbefore described which deed is duly recorded in the office of the recorder of deeds for Greene county, Missouri, in book 193 at page 423.

"That on the same day, to-wit, August 22, 1901, the said defendant intending and contriving to obtain an undue advantage of this plaintiff and intending to hold the same over her and thereby defeat her just claim if such differences between her and her husband should result in a separation and divorce—which however was not then contemplated by this plaintiff—in furtherance of said desire and with the consent and connivance of her said husband prepared a deed of trust for execution by this plaintiff and her husband purporting to and securing a note dated said date and for the sum of ten hundred and fifty dollars and due and payable two years after the date thereof.

"Plaintiff states in truth and in fact she signed said deed of trust and note for ten hundred and fifty dollars but she says the same is not binding in law and equity, first because she signed the same under constraint fearing that she would lose the money so placed by her to the credit of her said husband, and secondly because the same was given without any consideration whatever so far as the excess of six hundred and fifty dollars, for plaintiff says in truth and in fact the sum of four hundred dollars is all that was advanced by said defendant and the larger amount was inserted to gain the said advantage over her and she signed the same in the presence of said husband and not of her own free will and accord.

"Plaintiff further states that said note, even on the ten hundred and fifty dollars, contracts for usury and the declaration in said note that it shall be construed as an Arkansas contract, if such clause was in said note at

the date of its execution, was intended as and is an evasion of the usury laws of this State.

"Plaintiff further states that the defendant refrained from recording said deed of trust until after the differences between her and her said husband assumed a character rendering separation not only desirable but justifiable to both, and then in furtherance of said preconcerted plan by said J. L. Sims to cheat and defraud this plaintiff if she and her husband separated, the said J. L. Sims after said separation, to-wit, on the eleventh day of January, 1902, filed said deed of trust for record and the same is recorded in the office of the recorder of deeds within and for Greene county, Missouri, in book 192 at page 131.

"Plaintiff states that the only just claim of said defendant against this plaintiff and said property is the sum of four hundred dollars, which sum she is ready and willing to pay when the court shall so adjudge the same to be all due on said note, and plaintiff says that the eight hundred dollars, the proceeds of said former home, was the identical money and funds used in the purchase of said land from Chandler.

"Plaintiff further states that the bonds of matrimony between her and her said husband were dissolved on the tenth day of September, 1902, and that he has no property except the interest in the land herein described and that the defendant J. L. Sims is a non-resident of this State and that unless this remedy herein prayed for be granted plaintiff, circuity of action will be rendered necessary and multiplicity of suits will result.

"Wherefore, plaintiff prays that the note and deed of trust so held by said defendant J. L. Sims be by this court ordered credited with the sum of six hundred and fifty dollars and that said note be declared to be for the sum of four hundred dollars and that said deed of trust be declared to be a lien of the said sum of four hundred dollars and no more and to be a lien against the whole land for said sum and that the excess be cancelled be-

cause no consideration passed therefor and if it be claimed as a bonus that it be declared usurious and that all interest be ordered be declared forfeited because of the usurious rate received and that the defendant be compelled to produce said note in this court for the purpose of having said credit of six hundred and fifty dollars indorsed thereon, and that he be restrained and prevented from selling or disposing of said note, and that the defendant Bradshaw, who is named as trustee in said deed of trust and who was at the date of its execution and now is sheriff of Greene county, Missouri, be enjoined from selling under the terms of said deed of trust and for such other and further relief as to this court may seem proper and for her costs herein expended and plaintiff prays that if the court should decide that the said B. M. Sims is a necessary party hereto that summons issue commanding him to appear and answer."

Defendant filed the following demurrer to the petition:

"Come now the defendants and demur to the petition of plaintiff for the reason that said petition does not state facts sufficient to constitute a cause of action."

The demurrer was sustained and judgment entered thereon that the plaintiff's bill be dismissed and that she take nothing by her suit, from which judgment she appealed.

The petition alleged that there were unhappy differences between herself and her husband, owing, as she believed, to undue influence exercised over her husband by J. L. Sims (who was his father), but that she consented to borrow from J. L. Sims $400 to make up the balance necessary to pay Chandler for the land; that the defendant, J. L. Sims, intending and contriving to gain an undue advantage over the plaintiff and intending to hold the same over her and thereby defeat her just claims, if the difference between herself and husband should result in separation and divorce, with the con-

sent and connivance of her husband prepared the deed of trust for execution securing a note for $1,050, due two years after date (August 22, 1901), and that she signed the note and deed of trust.

The petition further alleged that $400 was all the money furnished by J. L. Sims for the purpose of making up the balance to be paid to Chandler, and alleged that the excess of the note ($650) is without consideration.

The petition also alleged that the note or contract is usurious, but does not state the facts from which the conclusion is drawn that the contract is tainted with usury.

Plaintiff alleges that the note and deed of trust is not binding on her for the following reasons: first, that she signed the same under constraint, fearing that she would lose the money placed in the bank to her husband's credit; second, because there was no consideration for six hundred and fifty dollars of the note and that she signed the same in the presence of her husband and not of her own free will and accord; alleges her readiness and willingness to pay $400 to J. L. Sims, whenever the court shall adjudge the same to be all that she is obliged to pay.

Plaintiff was not deceived as to the amount of the note. She made no objection to signing the note or to executing the deed of trust at the time she signed and executed the deed. Her contention is that only $400 of the $1,050, for which the papers were executed, was actually received; that the excess of $650, by agreement between J. L. and B. M. Sims, was to be held over her for the purpose of cheating her out of her property rights in the event the differences between herself and husband should culminate in separation and divorce and that through fear of losing the $400 of her own money, she had placed in the bank to the credit of her husband, she signed the papers in the presence of her husband, but not willingly.

To state the whole matter more succinctly, plaintiff had $400 of her own money in a bank, but deposited to the credit of her husband and subject to his order; he had a like amount deposited in the same bank to his credit. They had bargained for a piece of land at $1,200 and wanted $400 to make up the balance of the purchase price. This was furnished by J. L. Sims. The land was paid for and a deed made to plaintiff and her husband jointly. Unhappy differences existed between her and her husband at the time. The Simses, in order to have a pecuniary advantage over her in case the differences between plaintiff and her husband should result in separation and divorce, agreed that while only $400 should be furnished by J. L. Sims, yet a note for $1,050 should be executed and secured by a deed of trust on the joint land of plaintiff and her husband. This agreement was carried out and plaintiff became a party to it through the influence of fear of losing her $400 in bank, and through fear of widening the breach between herself and husband if she refused to sign the papers. The plaintiff and her husband have since been divorced. The note and deed of trust stand in full force. Plaintiff asks for equitable relief, offering to pay defendant, J. L. Sims, the $400 actually loaned whenever the court shall determine that sum to be all that is due him.

The note is not yet due and no steps have been taken by defendant to enforce its collection. The defense of a partial failure of consideration for the note will be available to defendant whenever J. L. Sims, by suit on the note or by foreclosure proceedings, undertakes to enforce its collection. In these circumstances a bill in equity to set aside the contract which fails to make an absolute and unconditional tender for the amount that is actually due and which contains no allegation that plaintiff is in danger of immediate loss by some step taken, or about to be taken by J. L. Sims, in respect to the note and deed of trust, that will debar plaintiff from

pleading the partial failure of consideration as a defense to the note when it matures and an effort is made to collect it, fails to allege adequate grounds to entitle plaintiff to any equitable relief. And if the petition states any grounds for equitable relief, they must be found in the allegations of the petition to the effect that plaintiff did not sign the note and execute the deed of trust of her own free will, but that she did so under a species of duress which vitiates the contract as to her.

An eminent commentator on equity jurisprudence says: "An undue advantage is taken of the party under circumstances which mislead, confuse, or disturb the just result of his judgment, and thus expose him to be the victim of the artful, the importunate, and the cunning. . . . In these and many like cases, if there has been great inequality in the bargain, courts of equity will assist the party upon the ground of fraud, imposition, or unconscionable advantage." Story's Eq. Jur. sec. 251.

Another eminent commentator says: "Where there is no coercion amounting to legal duress, but a transaction is the result of a moral, social, or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction, on the ground of undue influence, even though there may be no invalidity at law. . . . The doctrine of equity concerning undue influence is very broad, and is based upon principles of the highest morality. It reaches every case, and grants relief 'where influence is acquired and abused, or where confidence is reposed and betrayed.' " 2 Pomeroy's Eq. Jur., sec. 951. When a party is not a free agent and not equal to protecting himself, equity will protect him. Story's Eq. Jur., sec. 239.

In Turner v. Turner, 44 Mo. 535, it is held: "A conveyance obtained without sufficient consideration by

a person resorting to undue influence,'' ought to be set aside.

In Farmer's Executor v. Farmer, 39 N. J. Eq. 211, it was said: "A wife may bestow her property, by gift, on her husband, or she may make a contract with him which will be upheld in equity, but the courts always examine such transactions with an anxious watchfulness and dread of undue influence.'' It is further said in the same case: "Where a contract is made by parties holding confidential relations, . . . the burden, if the contract is assailed, rests on the stronger party to show that no advantage was taken, otherwise fraud will be presumed.''

In Moore v. Moore, 67 Mo. l. c. 197, it is said: "When confidential relations are shown to exist between grantor and grantee, and the conveyance bears marks of great inequality and great advantage to the grantee and without an adequate consideration, such a presumption [that it was fraudulent] might arise.''

A party ought not to retain advantage of a transaction which he has gained through a breach of confidence reposed in him, or through a power and dominion he has acquired over the mind and person of the other party, such as a husband is presumed to have acquired over his wife. This principle extends to every possible case in which a fiduciary relation exists or where one party has attained dominion and control over the other's mind. Todd v. Grove, 33 Md. 188; Falk v. Turner, 101 Mass. 494; Taylor v. Taylor, 49 U. S. (8 How.) 183; Smith v. Kay, 7 H. L. Cas. 750; Davis v. Strange's Executor, 8 L. R. A. (Va.) 261.

Prima facie plaintiff and her husband were not adversary parties to the transaction, but were acting together, and jointly contracted with J. L. Sims. The allegations in the petition, however, throw quite a different light on the transaction. According to the allegations of the petition, the Simses, husband and father-in-law of the plaintiff, conspired together to make the note

for $1,050 when but $400 was actually loaned or intended to be loaned, for the purpose of defrauding plaintiff out of her interest in the land securing the note, in the event the differences between B. M. Sims and his wife should culminate in separation and divorce; that through fear of losing her $400 deposited in the bank to the credit of her husband, and through fear of stirring up domestic discord, plaintiff in the presence of her husband (and presumably under his dominion) signed the note and executed the deed of trust. On one side of this transaction was father and son (husband and father-in-law of plaintiff) on the other was the wife, single-handed and without a counselor, suddenly called upon to execute a contract concocted and framed as a result of a conspiracy between the father and son, husband and father-in-law, to take from the wife of the son her interest in a valuable tract of land, without adequate consideration, should the existing differences between her and her husband ripen into separation and divorce. Plaintiff knew of the conspiracy when she signed the note and executed the deed of trust, but she was anxious to please her husband and was, presumably, under his dominion. To refuse to execute the papers, to her mind, was to entail a present loss on her of the $400 in the bank and to set aflame her domestic troubles which she was anxious to avoid.

In Earle v. Norfolk, etc., 36 N. J. Eq. 132, it is said: "Whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his will, and what he would not have done if left to himself, is undue influence, whether the control be exercised by physical force, threats, importunity, or any other species of mental or physical coercion." This case is approvingly cited in Bell v. Campbell, 123 Mo. 1, and in Hensinger v. Dyer, 147 Mo. l. c. 226.

It is not possible, if we accept the allegations of the petition to be true, as must be done on the demurrer, to come to any other conclusion, than that the free

agency of the plaintiff was destroyed and that she was constrained by the undue influences then and there brought to bear upon her by the Simses to sign the note and execute the deed of trust. Besides, the contract is so unconscionable as to entitle plaintiff to equitable relief, provided she is ready and willing and will tender into court what J. L. Sims is actually entitled to receive on the note.

We conclude that the petition states a meritorious cause of action and reverse the judgment and remand the cause with directions to the circuit court to overrule the demurrer and grant defendant leave to answer. *Reyburn* and *Goode, JJ.,* concur.